## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL NOURI, *on behalf of himself and all others similarly situated,*<br><br>        Plaintiff,<br>v.<br><br>UNIVERSITY OF SCRANTON,<br><br>        Defendant. | Case No.<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael Nouri ("Plaintiff"), by and through his undersigned counsel, brings this Class Action Complaint against Defendant University of Scranton ("Scranton" or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to him, which are based on personal knowledge.

### NATURE OF THE ACTION

1.    Higher education is no different from any other industry in as much as consumers (*i.e.*, students) have the ability to shop between different educational products offered by competitive institutions before ultimately purchasing the product that is right for them.

2.    Some colleges and universities offer an educational product without access to a campus or in-person community, while others offer an educational

product with access to a varied suite of services, activities, facilities and experiences through an on-campus, in-person educational experience.

3.    Scranton offers students the option to pick either (1) online classes, or (2) an on-campus, in-person educational experience in Scranton, Pennsylvania.

4.    Plaintiff, an undergraduate student during the Spring 2020 semester, paid tuition and fees to enroll in Scranton's on-campus, in-person education program, including all the benefits and services associated therewith for the entirety of the semester.

5.    Plaintiff's paid-for experience was cut short mid-way through the Spring  2020 semester, when that in-person educational experience was taken away from Plaintiff and other students at Scranton.

6.    In March 2020, in response to the outbreak of the SARS-CoV-2 virus, the virus that causes the COVID-19 disease (the "COVID-19 pandemic"), Scranton, like many other universities, transitioned to remote online-only education, canceled on-campus recreational events, canceled student activity events, and ordered students to refrain from going on campus.

7.    As a result, all on-campus education, services, and amenities were no longer available to Scranton students for the remainder of the Spring 2020 semester.

8.    Despite the harsh reality that students could no longer enjoy the benefit of the bargain for which they pre-paid, Scranton refused to provide a pro-rated

refund of tuition or fees tied to its on-campus education, services, and amenities that were not available to students for a significant part of the Spring 2020 semester.

9.      Accordingly, Scranton's students lost the benefits of the bargain for services and the experience they paid for but could no longer access or use following the school's transition to remote learning in March 2020.

10.     By not giving pro-rated refunds for tuition or fees charged for on-campus education and services not provided, Scranton breached its contracts with students or was otherwise unjustly enriched.

11.     It cannot be disputed that the circumstances underlying this legal action are unfortunate and unprecedented. However, the students did not choose these circumstances, and they certainly did not agree to pay tuition and fees for online-only education and services.

12.     It is unfair and unlawful for Scranton to retain tuition and fees for campus-based in-person education and services not being provided and to pass the financial losses on to its students.

13.     Importantly, Plaintiff does not challenge Defendant's discretion in adhering to federal, state, and local health guidelines, but rather challenges Scranton's decision to retain the tuition and fees, paid by Plaintiff and other students for in-person education, experiences, access to campus, and services, without providing such for the entire duration of the Spring 2020 semester.

14.    Plaintiff brings this class action for damages and restitution resulting from Scranton's retention of the tuition and fees paid by Plaintiff and the other putative Class members for in-person education and services not being provided. Specifically, this lawsuit seeks disgorgement of the pro-rated, unused amounts of the fees that Plaintiff and other putative Class members paid, but for which they were not provided the benefit, as well as a partial pro-rated tuition reimbursement representing the difference in fair market value between the on-campus product for which they had paid, and the online product that they received.

## PARTIES

15.    Plaintiff, Michael Nouri, is an adult, who at all relevant times, is a resident and citizen of the Commonwealth of Pennsylvania. He paid tuition and fees for the Spring 2020 semester. Less than halfway through the Spring 2020 semester, Plaintiff was forced to take his classes remotely, refrain from visiting campus, and prevented from utilizing various on-campus services for which he paid.

16.    Plaintiff was an undergraduate student enrolled at Scranton for the Spring 2020 semester, which was scheduled to run from approximately January 29, 2020 to May 22, 2020. Plaintiff did not have access to the campus after March 11, 2020 because the campus was closed due to the COVID-19 pandemic. Plaintiff paid tuition and fees for an in-person educational experience during the Spring 2020

4

semester, the benefits of which he lost because Scranton closed the campus and cut off access to on-campus services, facilities, and extracurricular activities.

17.    Defendant Scranton, is a private university founded in 1888. Scranton is composed of three colleges that offer dozens of major fields for undergraduate students, as well as a number of graduate programs. Defendant's undergraduate program enrolls students from Pennsylvania, New Jersey, New York, as well as several other states and countries. Its principal campus is located in the city of Scranton, Lackawanna County, Pennsylvania. Defendant is a citizen of Pennsylvania.

## JURISDICTION AND VENUE

18.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

19.    This Court has personal jurisdiction over Defendant because many of the acts and transactions giving rise to this action occurred in this District, and because Defendant conducts substantial business by operating its principal campus in this District, and soliciting students residing in this District to attend its institution.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, specifically, the contracts that are the subject of this action were formed in this District, and the performance and breach of contract also occurred in this District.

## FACTUAL ALLEGATIONS.

21.     Prior to the COVID-19 pandemic, Scranton had a longstanding tradition of offering most of its courses in face-to-face classroom settings on campus. In accordance with this prior course of conduct, Scranton scheduled the vast majority of its Spring 2020 courses to be in-person and on-campus.[1]

22.     Every Scranton student, when enrolling in courses, has the option to select either in-person classes with a physical campus location or courses offered partially or fully online through Desire2Learn, Scranton's learning management system ("LMS").

23.     When students register for courses, Scranton's electronic course catalog lists the physical location of each course offered, and highlights online-only classes with a red icon alerting that the course is a "Web Course Section."[2] Therefore, when enrolling in classes, Scranton students make informed choices

---

[1] *See generally* https://ssbprd.scranton.edu/appprd/syaclst.main (last visited Aug. 15, 2023).
[2] *See generally id.*

6

about whether to spend their tuition dollars on in-person or online modes of course delivery.

24.    Similarly, while Scranton advertises that it offers online advanced degree programs, it makes no such representations regarding its undergraduate degree programs.[3]

25.    Scranton recognizes that in-person and online instructional modes offer different educational experiences. Scranton alerts students who are considering taking an LMS course that they should go to the Desire2Learn web page to learn "what you need to know before taking an online course."[4] Additionally, several of Scranton's departments require graduate students to choose between in-person and online instructional modes upon their initial application to the university.[5]

---

[3]    *Compare    Graduate    Education*, University of Scranton, https://www.scranton.edu/academics/graduate-education/index.shtml (last visited Aug. 15, 2023) *with Undergraduate Programs of Study*, University of Scranton, https://www.scranton.edu/academics/undergrad-programs.shtml (last visited Aug. 15, 2023).

[4]    *Undergraduate Catalog 2019-2020* ("Undergraduate Catalog"), University of Scranton,    https://catalog.scranton.edu/mime/media/view/44/6211/20192020+ Undergraduate+Catalog.pdf, at 96.

[5]    *See, e.g.*, *Graduate Catalog 2019-2020* ("Graduate Catalog"), University of Scranton, https://catalog.scranton.edu/mime/media/view/43/5182/Published+2019-2020+Graduate+Catalog+82919+Amended.pdf at 64 ("The MBA program is offered in two formats: on-campus and online"); 99 (describing that fees, semester dates, and degree requirements differ between on-campus and online Master's programs in Education); 110 ("Students can choose to earn [M.S. in Finance] entirely online or on-campus").

26.     To enroll in classes, Scranton students are required to pay tuition and some form of mandatory fees. The Spring 2020 semester was scheduled to commence on or about January 29, 2020, and end on or around May 22, 2020.[6]

27.     Tuition for the Spring 2020 semester was $22,695 for full-time traditional undergraduate students, $1,164 per credit for full-time adult undergraduate students, and $913 per credit for part-time undergraduate students.[7] Students who registered for courses with a laboratory or studio component— including courses in hard sciences, communications, foreign language, art, music, nursing, English, and history and political science—paid additional course-specific fees, ranging from $25 to $274 depending on the course, for the use of the specified studio or laboratory resources.[8]

28.     Scranton uses its marketing materials, course catalog, and other bulletins to solicit students for its in-person, on-campus academic programs.

29.     Scranton describes in-person interaction with faculty as a core benefit of enrollment at the university. For example, Scranton's viewbook champions its "smaller class sizes" that allow professors to "really get to know our students as individuals." In-person interaction allows faculty to become "involved mentors"

---

[6] Undergraduate Catalog, *supra* note 4 at 750-52; Graduate Catalog, *supra* note 5 at 8.
[7] Undergraduate Catalog, *supra* note 4 at 21, 24; Graduate Catalog, *supra* note 5 at 55.
[8] Undergraduate Catalog, *supra* note 4 at 22-23.

who engage with student's on-campus activities and provides "individual attention" to students, all while fostering collaborative research with students.[9]

30.    Scranton also touts the benefits of other on-campus resources. For example, Scranton markets enrollment as a "Twenty-Four/Seven College Experience" that features "a full calendar of activities and more than 900 events" and "more than 80 student clubs and organizations."[10]

31.    In describing its core principle of *cura personalis*, Scranton acknowledges "the integral role that campus life and co-curricular engagement have in ensuring a transformational student learning experience."[11] Scranton outlines numerous ways that its in-person, on-campus resources benefit students, including but not limited to:

    a.    On-campus residence, which Scranton requires from all first- and second-year undergraduate students with limited exceptions;[12]

    b.    Career development resources, offered by Scranton's Gerard R. Roche Center through individual appointments, workshops, programs, and presentations;[13]

    c.    Cultural resources, offered by Scranton's Multicultural and Women's Centers, which offer "a safe, comfortable gathering

---

[9] *University of Scranton Viewbook Summer 2019* ("Viewbook"), University of Scranton,    https://issuu.com/theuniversityofscranton/docs/viewbook_summer_2019_-_issuu, at 10-11 (last visited Aug. 15, 2023).
[10] *Id.* at 32-33.
[11] Undergraduate Catalog, *supra* note 4 at 57.
[12] *Id.* at 57-58.
[13] *Id.* at 59.

space for discussion" and "a space for all students to explore their cultural identities;"[14]

    d.    Student counseling services, offered only in-person by Scranton's Counseling Center;[15]

    e.    Physical recreation and wellness opportunities, offered at the Byron Recreational Complex and at Pilarz Hall, including intramural sports in which over 1,500 students participate each year; and [16]

    f.    Music performances, which are open to any and all interested Scranton students, without enrollment requirements.[17]

32.    Scranton also highlights the extensive on-campus resources of the Harry and Jeanette Weinberg Memorial Library as a significant benefit of enrollment at the university, describing:

"94 computer workstations, large tables, soft seating, individual study space, group study rooms, quiet study areas, and the Heritage Room, a large reading room on the fifth floor overlooking the campus . . . The Reilly Learning Commons, which includes lecture capture facilities, high-end computing, 6 Macs, a 3D printer, a Writing Center Satellite, and reservable group study rooms . . . The Pro Deo Room, which includes a computer lab, café seating, and a 46-inch touchscreen table PC . . . The Second Floor, which includes a computer lab, group study rooms, large tables, study carrels, Reference materials and Periodicals . . . ."[18]

---

[14] *Id.* at 59.

[15] *Id.* at 60 ("The Counseling Center does not provide online therapy services.")

[16] *Id.* at 64, 73.

[17] *Id.* at 68.

[18] *Id.* at 80.

33.     Moreover, in advertising and soliciting students to attend the university, Scranton advertises its location as a central element of the academic experience. Scranton advertises that the city is "a vibrant college town" and "a mecca for outdoor activities," which makes the city "A Great Place to Call Home."[19]

34.     Plaintiff and members of the Class paid their tuition in the Spring 2020 semester to enjoy everything Scranton offered them, including on-campus resources, campus community, and in-person education throughout the entire Spring 2020 semester.

35.     When enrolling in classes for Spring 2020, Plaintiff and members of the Class chose to enroll in classes offered in-person, to obtain the benefits outlined above.

36.     Plaintiff and members of the Class were also required to pay a mandatory fee (the "Mandatory Fee") for the Spring 2020 semester. The Mandatory Fee included a "University Fee" of $200 for full-time undergraduate students and $25 for part-time undergraduate students, plus a $70 Recreational Complex Use Fee.[20]

---

[19] Viewbook, *supra* note 9 at 44-45.
[20] Undergraduate Catalog, *supra* note 4 at 24. The Recreational Complex Use Fee was optional for part-time undergraduate students. *Id.*

11

37.    Plaintiff and the members of the Class paid the Mandatory Fee for the Spring 2020 semester so they could benefit from on-campus services and facilities offered by Scranton to its students.

38.    Despite Plaintiff and Class Members paying the Spring 2020 semester tuition and Mandatory Fee to attend Scranton for an in-person and on-campus educational experience, Scranton failed to provide the promised in-person education for the duration of the entire semester, instead providing only online instruction for the majority of the Spring 2020 semester.

**A.    In Response to COVID-19, Scranton Closed Campus, Preventing Access to its Facilities, Services, Housing, and Dining, and Cancelled All In-Person Classes.**

39.    On March 11, 2020, the last Wednesday before Scranton's scheduled spring break, Scranton ceased in-person instruction. At that time, Scranton announced that it was extending spring break from one week to two weeks, and that when courses resumed on March 30, 2020, only remote instruction would be offered.[21] While Scranton originally planned to resume in-person instruction in mid-

---

[21] *COVID-19 Update Message*, University of Scranton (Ma. 11, 2020), http://web.archive.org/web/20200606163840/    https://www.scranton.edu/covid-19/documents/03-11-2020-covid-19-srp-campus-message-final.pdf.

April, on March 26, 2020, Scranton announced that remote-only instruction would continue for the remainder of the Spring 2020 semester.[22]

40.    On March 17, 2020, Scranton closed its main campus indefinitely.[23] During the closure, students were not permitted to access any campus buildings unless they had received special permission to remain in their residential halls.[24] The campus remained closed for the remainder of the Spring 2020 semester.

41.    Scranton did not hold any in-person classes for undergraduate students between March 11, 2020 and the end of Spring 2020 term. All Spring 2020 semester classes after March 11, 2020 were only offered in a remote online format with no in-person instruction or interaction.

42.    Most of the services for which the Mandatory Fee was assessed were also terminated or cancelled at or about this time, such as access to student health and wellness facilities, programs or services; studios and study spaces; fitness facilities; and student events.

---

[22] *COVID-19 Update Message*, University of Scranton (Mar. 26, 2020), http://web.archive.org/web/20200606163831/https://www.scranton.edu/covid-19/documents/update-3-26.pdf.

[23] *COVID-19 Update Message*, University of Scranton (Mar. 16, 2020), http://web.archive.org/web/20200606163838/https://www.scranton.edu/covid-19/documents/campus-closure-3-16.pdf.

[24] *COVID-19 Update Message*, University of Scranton (Mar. 26, 2020), http://web.archive.org/web/20200606163831/https://www.scranton.edu/covid-19/documents/update-3-26.pdf.

43.     Although Scranton provided pro-rated refunds for residence hall rooms and dining hall plans, Scranton refused to adjust its tuition policies, including its policies governing tuition or the Mandatory Fee. Under those policies, the shift to exclusive remote online instruction occurred after Scranton's deadline for students to receive *any* tuition refund for Spring 2020 enrollment by withdrawing from courses.[25]

## B.     Students Experienced Significant Losses, in Many Cases of Borrowed Funds as a Result of Scranton's Conduct.

44.     At Scranton, the median federal loan debt among borrowers who completed their undergraduate degree is $27,000.[26] The median monthly federal loan payment (if it were repaid over 10 years at 5.05% interest) for student federal loan borrowers who graduated from Scranton is $270.[27]

45.     In addition, 26% of graduating students at Scranton took out private loans.[28] Students with private loans had an average of $56,326 in private loan debt at graduation.[29]

---

[25] Undergraduate Catalog, *supra* note 4 at 23 (describing "No refund" beyond 31 days after the beginning of the semester, approximately March 1, 2020).
[26] *University of Scranton Tuition & Financial Aid*, U.S. News, https://www.usnews.com/best-colleges/university-of-scranton-3384/paying (last visited Aug. 11, 2023).
[27] *Id.*
[28] *Id.*
[29] *Id.*

46.    With the campus shut down for more than half of the semester, Plaintiff and the proposed Class have been deprived of the benefits of the on-campus educational experience as set forth above. Nevertheless, Scranton has refused to refund any portion of the tuition or the Mandatory Fee, despite not providing the on-campus educational, experience for which students paid.

47.    Students attending Scranton's Spring 2020 semester did not choose to attend an online institution of higher learning, but instead chose to enroll in Scranton's in-person, on campus educational program.

48.    During the online portion of the Spring 2020 semester, Scranton principally used programs by which previously recorded lectures were posted online for students to view on their own, or by virtual Zoom meetings. Therefore, there was a lack of classroom interaction between students and professors and among students that is instrumental in interpersonal skill development.

49.    The online formats used by Scranton did not require memorization or the development of strong study skills given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams.

50.    Students were deprived of the opportunity for hands-on, collaborative learning and in-person dialogue, feedback, and critique.

51.    Access to facilities such as libraries, laboratories, computer labs, and study rooms, integral to a university education, and access to the myriad activities offered by campus life that foster social development, leadership, wellness, independence, and networking for future careers, are all substantial and materials parts of the basis upon which Scranton can charge the tuition it charges. Contrary to Scranton's promises, these services and facilities were not provided.

52.    Scranton has not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for the Spring 2020 semester for the period it moved to online distance learning.

53.    Nor has Scranton refunded any portion of the Mandatory Fee it collected from Plaintiff and the members of the Class for the Spring 2020 semester even though Defendant closed or ceased operating the services and facilities for which the Mandatory Fee was intended to pay.

54.    Plaintiff and the Class are therefore entitled to a pro-rata refund of the tuition and Mandatory Fee  they paid Scranton for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed.

## CLASS ACTION ALLEGATIONS

55.    Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

All University of Scranton undergraduate students who satisfied their payment obligations for the Spring Semester 2020 tuition and/or Mandatory Fees and enrolled in at least one in-person on-campus class (the "Class").

56.    Specifically excluded from the Class are all undergraduate students who received full Scranton-funded scholarships for the Spring 2020 semester, Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers.

57.    Subject to additional information obtained through further investigation and discovery, Plaintiff reserves the right to amend, narrow, or expand the class definitions.

58.    **Numerosity:** The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is unknown to Plaintiff, Scranton reported thousands of undergraduate students enrolled for the 2019-2020 school year. The names and addresses of all such students are known to Scranton and can be identified through Scranton's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

17

59.    **Commonality:** There are questions of law and fact common to the members of the Class including, without limitation:

a.    Whether Scranton accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus educational experience, as well as certain facilities and services throughout the Spring 2020 semester;

b.    Whether Scranton breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus educational experience after March 11, 2020;

c.    Whether Scranton breached its contracts with Plaintiff and the Class by transitioning to remote education, and failing to provide the services and facilities to which the Mandatory Fee pertained after mid-March 2020;

d.    Whether Scranton was unjustly enriched by retaining a portion of the tuition and Mandatory Fee during the period of time Scranton was closed during the Spring 2020 semester, and Plaintiff and the members of the Class were denied an in-person and on-campus educational experience and access and the services and facilities for which the Mandatory Fee was paid;

      e.     Whether Scranton intentionally interfered with the rights of the Plaintiff and the Class when it moved all in-person classes to a remote online format, cancelled all on-campus events, strongly encouraged students to stay away from campus, and discontinued services for which the Mandatory Fee was intended to pay, all while retaining the tuition and Mandatory Fee paid by Plaintiff and the Class; and

      f.     The amount of damages and other relief to be awarded to Plaintiff and the Class members.

60.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus educational experience for the tuition they paid and the services and facilities for the Mandatory Fee that they paid, that Scranton stopped providing for the remainder for the Spring 2020 semester.

61.    **Adequacy of Representation:** Plaintiff is an adequate class representative because his interests do not conflict with the interests of the other Class members whom he seeks to represent. Plaintiff has retained competent counsel who are experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

62.    **Predominance.** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages is common to Plaintiff and each member of the Class. If Defendant breached its contracts to Plaintiff and Class members, then Plaintiff and each Class member suffered damages by that conduct.

63.    **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members is relatively small compared to the burden and expense that would be required to individually litigate their claims against Scranton, making it impracticable for Class Members to individually seek redress for Scranton's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the

benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

64.    **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria and Class members may be readily identified through Defendant's books and records.

**FIRST CLAIM FOR RELIEF**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

65.    Plaintiff repeats and re-allege the factual allegations above, as if fully alleged herein.

66.    Plaintiff brings this claim individually and on behalf of the members of the Class.

67.    When Plaintiff and Class members paid Scranton tuition and the Mandatory Fee for the Spring 2020 semester, Scranton agreed to, among other things, provide an in-person and on-campus educational experience as well as the services and facilities to which the Mandatory Fee they paid pertained throughout the Spring 2020 semester. As a result, Plaintiff and each member of the Class entered into binding implied contracts with Scranton.

68.    When entering into implied contracts, Plaintiff and Class members reasonably believed and expected that Scranton would provide them with an on-campus and in-person educational experience, as opposed to remote learning, and

use of Defendant's facilities and services for the duration of the entire Spring 2020 semester as mutually agreed and intended in accordance with Defendant's publications, including but not limited to, its marketing materials, course catalogues, and other bulletins, as well as Scranton's history and prior course of providing in-person and on-campus education.

69.    Plaintiff and Class members fully performed their obligations under their implied contracts with Scranton by registering for classes and paying tuition and the Mandatory Fee.

70.    Defendant is in possession of all contracts, materials, circulars, advertisements and the like between Plaintiff and members of the Class on one hand, and Scranton on the other.

71.    Scranton breached its contracts with Plaintiff and the Class by failing to provide the promised in-person and on-campus educational experience as well as the services and facilities to which the Mandatory Fee pertained throughout the Spring 2020 semester, yet has retained monies paid by Plaintiff and the Class for an on-campus and in-person educational experience and access to these services and facilities during the entire Spring 2020 semester. Plaintiff and the members of the Class have therefore been denied the benefit of their bargain.

72.    Plaintiff and the members of the Class have suffered damages as a direct and proximate result of Scranton's breach in the amount of the prorated

portion of the tuition and Mandatory Fee they each paid equal to the reduction in contracted for education and services during the portion of time the Spring 2020 semester when Scranton discontinued in-person classes and closed campus facilities.

73.    Scranton should return such portions of the tuition and Mandatory Fee to Plaintiff and each Class Member.

**SECOND CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

74.    Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

75.    Plaintiff brings this claim individually and on behalf of the members of the Class in the alternative to the First Claim for Relief, to the extent it is determined that Plaintiff and the Class do not have an enforceable contract with Scranton regarding the relief requested.

76.    Plaintiff and members of the Class conferred a benefit on Scranton in the form of tuition and the Mandatory Fee paid for the Spring 2020 semester. The payment of this tuition and Mandatory Fee was to be in exchange for an in-person, on-campus educational experience to be provided to Plaintiff and the members of the Class throughout the Spring 2020 semester.

77.    Scranton knowingly accepted the benefits conferred upon it by Plaintiff and Class members.

78.    Scranton has retained the full benefit of the tuition and Mandatory Fee payments made by Plaintiff and the members of the Class for the Spring 2020 semester—without providing the benefits that Plaintiff and Class members were owed.

79.    For example, Scranton failed to provide Plaintiff and Class Members access to many on-campus facilities and services after March 11, 2020, yet Scranton assessed Plaintiff and Class Members with tuition and fees that covered the cost of upkeep and maintenance of such facilities and services.

80.    Indeed, as a result of closing campus and moving classes online, Scranton saved significant sums of money in the way of reduced utility costs, reduced meaning and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work student students, and otherwise.

81.    The costs incurred for having an online only program is significantly lower than the overhead needed to provide classes and services on campus.

82.    As a result of Scranton's retention of all the tuition and Mandatory Fee paid by Plaintiff and members of the Class during the period of time Scranton was closed Plaintiff and the members of the Class were denied an in-person and on-campus educational experience and access and the services and facilities for which

the Mandatory Fee were paid. This was unjust and inequitable under the circumstances.

83.    Allowing Scranton to retain the full benefit of tuition and Mandatory Fees paid for in-person on campus education and experiences, after reducing the benefit provided and the costs incurred by Scranton, unjustly enriched the Defendant.

84.    Accordingly, Scranton has been unjustly enriched and should return the pro-rated portion of the tuition and Mandatory Fee that Plaintiff and Class members each paid equal to the reduction in benefit for education and services during the remainder of the Spring 2020 semester when Scranton discontinued in-person classes and closed campus facilities.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief as follows:

(a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)    For compensatory damages in an amount to be determined by the trier of fact;

(d)    For an order of restitution and all other forms of equitable monetary relief;

(e)    Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

(f)    Awarding pre- and post-judgment interest on any amounts awarded; and,

(g)    Awarding such other and further relief as may be just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

A jury trial is demanded on all claims so triable.

Dated:  August 16, 2023                              Respectfully submitted,

*s/ Gary F. Lynch*

Gary F. Lynch
Jamisen A. Etzel
Nicholas A. Colella
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
gary@lcllp.com
jamisen@lcllp.com
nickc@lcllp.com