## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL NOURI, *on behalf of himself and all others similarly situated*,

        Plaintiff,

    v.

UNIVERSITY OF SCRANTON,

        Defendant.

CIVIL ACTION NO. 3:23-CV-01362

(MEHALCHICK, J.)

## MEMORANDUM

Plaintiff Michael Nouri ("Plaintiff") initiated this lawsuit on behalf of himself and all others similarly situated on August 16, 2023, by filing a complaint ("the Complaint") against the Defendant University of Scranton ("the University") alleging a breach of implied contract claim or, in the alternative, an unjust enrichment claim. (Doc. 1). Presently before the Court is a motion to dismiss filed by the University. (Doc. 10). For the following reasons, the motion shall be **DENIED**. (Doc. 10).

I.    **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from the Complaint.[1] (Doc. 1). At all relevant times, Plaintiff was a tuition-paying student at the University. (Doc. 1, ¶ 4). In March 2020, in response to the Covid-19 pandemic, the University's campus shut down and the school

---

[1] In deciding a motion to dismiss, a court is generally limited to the allegations set forth in the pleadings, however, it may also consider documents attached to the complaint and matters of public record. *City of Edinburgh v. Pfizer, Inc.*, 754 F.3d 159, 166 (3d Cir. 2014). Included in the Complaint are various links to the University's website, its Undergraduate and Graduate Course Catalog for 2019-2020, and its Viewbook for the Summer of 2019. (Doc. 1, ¶¶ 22 n.1, 24 n.3-8, 29 n.9).

transitioned to online-only education for the remainder of the semester. (Doc. 1, ¶ 6). According to the Complaint, as a result of this, all on-campus education, services, and amenities were no longer available to Scranton students for the remainder of the Spring 2020 semester. (Doc. 1, ¶ 7). Despite students' inability to access on-campus benefits, including housing, educational and recreational facilities, and dining, the University refused to provide students with a pro-rated refund for the tuition and fees they paid to attend. (Doc. 1, ¶¶ 8, 39). This includes a mandatory fee used to fund "on-campus services and facilities offered by [the University] to its students." (Doc. 1, ¶¶ 36-37). These services and facilities include student health programming, wellness facilities, studios, study spaces, fitness centers, and student events. (Doc. 1, ¶ 42).

Plaintiffs assert that the University retained tuition and fees for services not provided to students. (Doc. 1, ¶ 12). Seeking restitution, compensatory damages, and all other forms of equitable monetary relief, on August 16, 2023, Plaintiff filed this lawsuit on behalf of himself and other alleged student class members. (Doc. 1, at 25-26). Plaintiff alleges a breach of an implied contract by claim and, in the alternative, an unjust enrichment claim against the University. (Doc. 1, ¶¶ 65-73, 74-84).

On October 11, 2023, the University filed the instant motion to dismiss. (Doc. 10). On October 25, 2023, the University filed a brief in support of their motion. (Doc. 13). On December 8, 2023, Plaintiff filed a brief in opposition. (Doc. 16). On December 22, 2023, the University filed a reply brief. (Doc. 17). Accordingly, the motion is fully briefed and ripe for discussion. (Doc. 13; Doc. 16; Doc. 17).

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although a court must accept the factual allegations in a complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, the United States Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In evaluating a motion to dismiss, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

III.   DISCUSSION

The University argues for the dismissal of Plaintiff's breach of contract and unjust enrichment claims. (Doc. 13, at 2). From the University's perspective, Plaintiff was never promised the "on-campus" experience he alleges he was deprived of. (Doc. 13, at 2). The University also asserts that its reservation of rights permitted it to move classes online and that Plaintiff ratified and accepted Scranton's modification by continuing to attend the University even after his education moved online. (Doc. 13, at 2). Alternatively, the University contends that Plaintiff's claim for tuition must be dismissed because he received the benefit he paid for. (Doc. 13, at 2). Arguing against dismissal, Plaintiff maintains that he has stated both a breach of an implied contract claim and, in the alternative, an unjust enrichment claim. (Doc. 16, at 2). Plaintiff also refutes the University's contentions regarding its reservation of rights, Plaintiff's ratification, and Plaintiff's receipt of the benefit of his tuition. (Doc. 16, at 2). For the following reasons, the Court agrees with Plaintiff and will **DENY** the University's motion to dismiss. (Doc. 10).

A.   BREACH OF IMPLIED CONTRACT

"The student-college relationship is essentially contractual in nature." *Mangla v. Brown Univ.*, 135 F.3d 80, 83 (1st Cir. 1998). Under Pennsylvania law, a valid and binding contract exists if the parties (1) manifest an intention to be bound by the agreement; (2) the terms of the agreement are sufficiently definite; and (3) there is consideration by both parties. *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 666 (3d Cir. 1998). To state a breach of contract claim, Plaintiff must allege "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Genomind, Inc. v. UnitedHealth Grp. Inc.*, No. CV 21-373, 2021 WL 3929723, at *6 (E.D. Pa. Sept. 1, 2021)

(quoting *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. Ct. 2002)). The essential elements of an implied contract, as at issue here, are the same as an express contract, "except the contract is implied through the parties' conduct, rather than expressly written." *Enslin v. The Coca-Cola Co.*, 136 F.Supp.3d 654, 675 (E.D. Pa. 2015). In the context of colleges and universities, the Third Circuit has held that ordinary Pennsylvania contract law applies. *See Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, 311-12 (3d Cir. 2023) ("Pennsylvania has not jettisoned ordinary contract principles permitting implied contracts in cases where, as here, students allege that a university failed to perform a specific undertaking").

### 1. The University's Promise of an "On-Campus" Experience

Plaintiff's implied breach contract claim is premised on his allegation that he was deprived of the "on-campus" experience the University promised him. (Doc. 1, ¶¶ 65-73). The University argues that no such promise existed, stating "Plaintiff has failed to plead that [the University] promised an exclusively 'on-campus experience' in sufficiently definite terms to form a valid and enforceable contract." (Doc. 13, at 7). Plaintiff responds that the University "promised a robust on-campus educational environment, for which students prepaid substantial tuition and fees, but [the University] failed to live up to its end of the bargain," and that this constitutes a breach of implied contract. (Doc. 16, at 9).

In making their arguments, both parties rely on the Third Circuit's recent decision in *Hickey v. University of Pittsburgh*.[2] 81 F.4th 301 (3d Cir. 2023). In *Hickey*, the Third Circuit

---

[2] The Third Circuit's decision in *Hickey* is aligned with other Circuits that have addressed similar claims. See *Rynasko v. New York University*, 63 F.4th 186, 197 (2d Cir. 2023); *Jones v. Administrators of Tulane Educational Fund*, 51 F.4th 101, 114 (5th Cir. 2022); *Gociman v. Loyola University of Chicago*, 41 F.4th 873, 884 (7th Cir. 2022); *Hernandez v. Illinois Institute of Technology*, 63 F.4th 661, 668 (7th Cir. 2023); *Delisle v. McKendree University*, 73 F.4th 523, 528 (7th Cir. 2023); *Shaffer v. George Washington University*, 27 F.4th 754, 763 (D.C. Cir. 2022).

reviewed similar breach of contract claims stemming from plaintiff-students' allegations that they were deprived of the on-campus experiences they had contracted for with their defendant-universities due to the Covid-19 pandemic. 81 F.4th at 307. The Third Circuit found that the plaintiff-students had sufficiently pled their breach of contract claims because "allegations of frequent references to in-person instruction in university publications, the schools' tradition of in-person instruction, and their different marketing and price structure for online programming support a reasonable inference that the parties impliedly contracted for in-person education, and that is sufficient to state a claim for breach of contract." *Hickey,* 81 F.4th at 314. It is the University's position that Plaintiff has failed to allege these elements and thus has failed to allege that an implied contract exists. (Doc. 13, at 12-13). To distinguish this case from *Hickey*, the University argues that while the University's "marketing materials emphasized the benefits of an education at [the University], it made no promises of an in-person education."[3] (Doc. 13, at 16). Further, the University contends that Plaintiff has failed to allege that he was deprived of on-campus benefits such as career development, counseling services, physical recreation, and musical performances. (Doc. 13, at 16-17). Plaintiff responds that the University "made a specific promise to provide an in-person education and on-campus experiences, which can be inferred through: '(1) [the University's] publications touting the benefits of the 'on-campus experience'; (2) [its] longstanding pre- pandemic tradition of in-person education; and (3) the separate marketing and pricing of online and in-person programs.'" (Doc. 16, at 12). The Court will address each of these elements in turn.

---

[3] The University preserves its position that *Hickey* was wrongly decided as well as its right to challenge the *Hickey* decision upon appeal. (Doc. 13, at 13 n.4).

Looking first to the University's publications, Plaintiff alleges that the University's marketing materials tout the "integral role that campus life and co-curricular engagement have" on an education at the University. (Doc. 1, ¶¶ 30-32). Plaintiff also alleges that the University advertises a "Twenty-Four/Seven College Experience" that features "a full calendar of activities and more than 900 events" and "more than 80 student clubs and organizations." (Doc. 1, ¶ 30). The Complaint further suggests that the University promotes its location as "a central element of the academic experience" at the University, largely through claims that the University is located in a "vibrant college town," "a mecca for outdoor activities," and "a Great Place to Call Home." (Doc. 1, ¶ 33).

For the purposes of the instant motion, when "viewed in context with [Plaintiff's] payment of tuition and registration for in-person classes prior to the campus closures, these representations support a reasonable inference that in-person education and access to campus resources were among the benefits of the matriculation bargain." *Hickey*, 81 F.4th at 312-13; *see Faw v. Villanova University*, No. CV 23-3897, 2024 WL 3237601, at *3 (E.D. Pa. June 28, 2024) (finding that plaintiff-student had sufficiently alleged breach of an implied contract against defendant-university for failing to provide an on campus experience in part because plaintiff-student alleged that the defendant-university had promoted its campus's location, scenery, and accessibility to Philadelphia on its website). Thus, the Court finds a review of the first *Hickey* element weighs in favor of Plaintiff's claim.

Looking next to whether Plaintiff has alleged a tradition of in-person education at the University, the Complaint states that the University "had a longstanding tradition" of offering in-person courses prior to the Covid-19 pandemic. (Doc. 1, ¶ 21); *see Hickey*, 81 F.4th at 312-13. According to the Complaint, because the University alerts students registering for classes

which courses are "Web Course Section[s]," "students make informed choices about whether to spend their tuition dollars on in-person or online modes of course delivery." (Doc. 1, ¶ 23). By offering both teaching formats, Plaintiff avers that the University "created the reasonable expectation that whichever format a student chooses, that student will receive instruction in that format for the entirety of the semester." (Doc. 1, ¶¶ 3, 22, 25; Doc. 16, at 7-8). For the purposes of the instant motion to dismiss, this inference is aligned with the University's "tradition of providing in-person education" to students opting to take classes on-campus. *See Shaffer v. George Washington Univ.,* 27 F.4th 754, 764 (D.C. Cir. 2022) (recognizing a defendant-university's "historic practice" of on-campus education as supporting a student-plaintiff's allegation of implied contract for in-person instruction).

Courts have found that even when a university has previously offered online courses, allegations that the university has had a "historic practice" of offering an on-campus education is sufficient to support an implied breach of contract claim in this context. *Shaffer,* 27 F.4th at 764; *see Faw,* 2024 WL 3237601, at *4 (finding defendant-university's tradition of providing in-person education sufficient to support their implied breach of contract claim, even where the university-defendant also previously offered online course). Thus, because Plaintiff alleges that he had a reasonable expectation of engaging in an on-campus experience when he chose to enroll in a fully in-person curriculum, and that the University had a tradition of offering in-person classes, Plaintiff's pleading of this element supports his breach of an implied contract claim. (Doc. 16, at 8); *see Jones v. Administrators of Tulane Educ. Fund,* 51 F.4th 101 (5th Cir. 2022) ("we draw the reasonable inference from the factual allegations in the [] Complaint that Tulane has established a historic practice of providing in-person instruction to students who pay the cost of residential tuition."); *see Faw,* 2024 WL 3237601, at *4.

Lastly, looking to the separate marketing and pricing of online and in-person programs at the University, the Complaint contains no allegation that online and on-campus programs were priced differently. (Doc. 1). However, Plaintiff points out that "*Hickey* did not establish a mandatory set of elements for tuition refund claims, but endorsed a non-exhaustive list of factors from which a promise for in-person education can be inferred." (Doc. 16, at 8) (citing *Hickey*, 81 F.4th at 312). Plaintiff concludes that "even where a university does not price online and in-person tuition differently, [courts have found] student-plaintiffs still stated a claim for breach of implied contract." (Doc. 16, at 14); *see Hickey*, 81 F.4th at 305-06; *see also Rynasko v. New York Univ.*, 63 F.4th 186, 199 (2d Cir. 2023) (stating "we cannot conclude that a differential between in-person and online classes is a necessary condition for plausibly alleging an implied contract for in-person courses and services").

While Plaintiff does not allege a price differential between in-person and online learning at the University, allegations in the Complaint do support Plaintiff's argument that the University markets its on-campus experience differently than its online-only degree programs. (Doc. 1, ¶¶ 24-27). According to the Complaint, the University "advertises that it offers online advanced degree programs, it makes no such representations regarding its undergraduate degree program," and "recognizes that in-person and online instructional modes offer different educational experiences. [The University] alerts students who are considering taking an LMS course that they should go to the Desire2Learn web page to learn 'what you need to know before taking an online course.'" (Doc. 1, ¶¶ 24, 25). Further, the Complaint states "several of [the University's] departments require graduate students to choose between in-person and online instructional modes upon their initial application to the

university." (Doc. 1, ¶ 25). These allegations support that the University markets online and on-campus learning differently.

Having assessed the three elements detailed in *Hickey*, the Court finds Plaintiff has sufficiently alleged the University promised him an on-campus experience and that he has stated a claim for breach of an implied contract. 81 F.4th at 313. The University's motion to dismiss is **DENIED** on this basis. (Doc. 18); *see Salerno v. Fla. S. Coll.*, 488 F.Supp.3d 1211, 1217 (M.D. Fla. 2020) (denying motion to dismiss in Covid-19 tuition refund dispute because defendant-school's publications and materials "touted its many resources and facilities -- all of which were located on the campus thereby implying in-person participation"); *see also Durbeck v. Suffolk Univ.*, 547 F. Supp. 3d 133, 146 (D. Mass. 2021) (denying defendant-university's motion to dismiss where plaintiff-students "state[d] a plausible claim for breach of an implied-in-fact contract for an in-person experience for the entire spring 2020 semester."); *see also Doe v. Univ.*, No. 20-1264, 2020 WL 7634159, at *2 (C.D. Ill. Dec. 22, 2020) ("Courts have largely denied universities' motions to dismiss on nearly identical breach of contract claims because they found there were sufficient facts to allege a contract for in-person instruction based on university handbooks, catalogs, and brochures").

### 2. The University's Reservation of Rights

The University argues that its reservation of rights permits it to move classes online. (Doc. 13, at 18-19). According to the University, although the *Hickey* court found the "language of [the defendant-university's] reservation of rights was not sufficiently specific to cover a transition to solely online coursework," the language of the University's reservation of rights is "broader and clearer," and allows the University "*to change the arrangement,*

*scheduling, credit, or content of courses*; and to change the fees listed in this catalog." [4] (Doc. 13, at 19; Doc. 13-1, at 2); 81 F.4th at 313 n.8 (emphasis added). Thus, as the University sees it, shifting courses to an online format "is a change to the 'arrangement' or 'scheduling' of classes and was not included in the reservation of rights [previously] considered by the Third Circuit [in *Hickey*]." (Doc. 13, at 14). The University also asserts that it "expressly reserved the right to limit students' physical access to campus if deemed to be in the best interests of the students or the university." (Doc. 13, at 19; Doc. 13-1, at 2); *see Smith v. Univ. of Pennsylvania,* 534 F. Supp. 3d 463, 474 (E.D. Pa. 2021) (holding that reservation of rights to "suspend normal operations" due to emergencies included a move to online-only format and did "not promise a refund or credit for time lost").

According to Plaintiff, the University's reservation of rights does not bar his claims. (Doc. 16, at 19). Pointing again to *Hickey*, Plaintiff states "[t]he Third Circuit emphasized that unless a reservation of rights clause 'specifically address[es] emergencies or other force majeure events,' a reservation of rights clause cannot 'as a matter of law,' allocate 'the entire financial consequences of the pandemic change to online classes to the students.'" (Doc. 16, at 20) (internal citations partially omitted); 81 F.4th at 313 n.8. Addressing a case cited by the University, *Smith v. University of Pennsylvania*, Plaintiff suggests that for a court to bar a tuition refund claim based on a defendant-university's reservation of rights, said reservation of rights must explicitly address suspension of on-campus operations due to an emergency and must

---

[4] The reservation of rights implicated in *Hickey* stated, in relevant part: "The information in this [Course] bulletin is subject to change" including "the status of policies, programs, descriptions of curricula, or other information in this bulletin."  81 F.4th at 313 n.8.

contemplate "the cancellation of classes and/or the full or partial closure of certain areas of the University."[5] (Doc. 16, at 21); 534 F. Supp. 3d at 474.

At this early stage of the litigation, the Court finds the language of the reservation of rights to be too ambiguous as applied in this context to warrant dismissal. *See Canters Deli Las Vegas, LLC v. FreedomPay, Inc.*, 460 F. Supp. 3d 560, 569 (E.D. Pa. 2020) (providing "if the contract is determined to be ambiguous, then the interpretation of the contract is left to the factfinder"). As argued by Plaintiff, when courts have previously dismissed similar claims as barred by a reservation of rights, the implicated reservation of rights have specifically anticipated suspension of on-campus activities due to emergency circumstances. *See Smith*, 534 F. Supp. 3d at 474. Here, while the University's reservation of rights does state that the University has "the right to refuse to admit or readmit any student at any time should it be deemed necessary in the interest of the student or of the University to do so," the reservation of rights does not unambiguously allow the University to shift the entirety of its benefits to an online format or anticipate any emergency circumstances which would permit the University to do so. (Doc. 13-2). And, while the University reserves the right "to change the information, regulations, requirements and procedures announced in [the course] catalog," the reservation of rights does not unambiguously permit the University "to fail to offer the [bargained for] services and still charge for [them]." (Doc. 13-2); *Jones*, 51 F.4th at 114. Because finding the

---

[5] The relevant portion of reservation of rights implicated in *Smith* reads as follow:

Although Penn normally never stops operating, emergencies such as severe weather conditions may sometimes result in the cancellation of classes and/or the full or partial closure of certain areas of the University. Decisions affecting work schedules and class cancellation are made by the Executive Vice President in consultation with the Provost.

534 F. Supp. 3d at 474.

University's reservation of rights bars Plaintiff's claims would require this Court to interpret its terms, and because the Court would be better suited to do so after development of a record in this case, the Court will **DENY** Plaintiff's motion to dismiss on this basis. (Doc. 18); *see Shaffer*, 27 F.4th at 764-65 (denying a motion to dismiss plaintiff-student's contract claims where "the reservation language does not specifically address emergencies or other force majeure events."); *see also Metzner v. Quinnipiac Univ.*, 528 F. Supp. 3d 15, 37 n.7 (D. Conn. 2021) (finding a defendant-university's argument that its reservation of rights barred breach of contract claims premature and better resolved after factual development).

### 3. The University's Impossibility, Ratification, and Modification Arguments

The University argues that even if an implied contract for on-campus instruction did exist between Plaintiff and the University, the University was excused from performance by impossibility when then Pennsylvania Tom Governor Wolf issued his stay-at-home order. (Doc. 13, at 20-21). The University also asserts that it proposed a modification to any existing implied contract for on-campus learning "by offering to continue classes in an online-only learning environment due to the COVID-19 pandemic." (Doc. 13, at 20). Thus, the University avers that Plaintiff "could have sought to rescind the existing contract or otherwise objected to this proposed modification, such as by timely requesting a refund of tuition or declining to resume courses until [the University] reinstated on-campus classes." (Doc. 13, at 22). Alternatively, the University argues that if Plaintiff did not accept a modification, he ratified it by continuing to take classes and receive credit. (Doc. 13, at 20-21). It is therefore the University's position that Plaintiff "made no effort to disclaim the benefits (i.e., his education or academic credits) and continued to reap those rewards during and after the conclusion of the Spring 2020 semester." (Doc. 13, at 24).

Plaintiff responds that the switch to online learning was not a proposed modification, but instead "a unilateral and abrupt change to the parties' implied contract that reduced [the University's] obligations but did nothing to alter Plaintiff's obligations or compensate him (and other students) for the change in terms," which Plaintiff alleges lacked consideration. (Doc. 16, at 17). Plaintiff also argues that he did not waive his right to sue, nor did he ratify the contract and that none of the allegations in the Complaint support that he had an opportunity to rescind, and "any rejection of the online format by a student would leave them with no refund and no instruction or credits," as the partial refund deadline had passed. (Doc. 16, at 17-18). Plaintiff therefore argues that his continued class attendance amidst the pandemic did not constitute a student's knowing waiver of the right to sue and that, regardless, waiver is a question of fact for the jury. (Doc. 16, at 18-19). The Court agrees with Plaintiff. *See Meng v. New Sch.*, 686 F.Supp.3d 312, 322 (S.D.N.Y. 2023) (rejecting defendant's waiver argument because the only fact in support was plaintiff's continued attendance, which is "equivocal at best and is not necessarily inconsistent with an intent to later sue for damages" . . . "Given the factual nature of the waiver inquiry, the Court finds dismissal on this basis to be inappropriate at this stage of the case").

In Pennsylvania, a contract "may be modified by subsequent agreement through words, written or oral, or by conduct of the parties." *In re Labrum & Doak*, No. CIV. A. 98-4780, 2000 WL 1204646, at *7 (E.D. Pa. Aug. 23, 2000). "Acceptance of a modification 'may be implied from a course of conduct in accordance with its existence' after notice of the impending modifications and an opportunity to accept or reject it." *Camden v. Bucknell Univ.*, No. 4:23-CV-01907, 2024 WL 760232, at *3 (M.D. Pa. Feb. 23, 2024) (internal citations omitted). Here, it is not apparent from the face of the pleadings that Plaintiff ratified or

accepted any modification to the University's implied contract. (Doc. 1). A similar scenario to the one at bar was addressed in *Faw v. Villanova University* and *Camden v. Bucknell University*, where the Eastern and Middle Districts of Pennsylvania respectively held that in cases where a plaintiff-student's tuition was paid in full, as Plaintiff alleges it was here, it is "speculative at best to suggest that students could have opted out of remote instruction in exchange for a refund or credit toward a future semester," and "unclear how [the university's] unilateral announcement of a transition to remote learning provided the plaintiff a reasonable opportunity to reject that supposed proposal." 2024 WL 3237601, at \*5 (citing *Camden*, 2024 WL 760232, at \*3). This same applies here. Nothing in the Complaint supports that students were given the option to opt out of online courses in exchange for a refund. (Doc. 1, ¶ 39); *see Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335, 1343 (S.D. Fla. 2020) ("The Court disagrees that the issue of ratification is established on the face of the pleadings . . . the pleadings [do not] show that Plaintiff knew he could reject the contract at any point during the Spring semester."). Plaintiff alleges that the deadline for students to receive a tuition refund had passed by that point in March 2020. (Doc. 1, ¶ 40). Furthermore, waiver and ratification are generally questions of fact better determined with the benefit of a fully developed record. *See Sabatini v. Its Amore Corp.*, 455 F. App'x 251, 256 (3d Cir. 2011); *see also Meng v. New Sch.*, 686 F. Supp. 3d 312, 322 (S.D.N.Y. 2023) ("Given the factual nature of the waiver inquiry, the Court finds dismissal on this basis to be inappropriate at this stage of the case.").

As for the University's impossibility defense, in Pennsylvania, if a party's 'continued performance of a contract is rendered illegal by a subsequent governmental regulation,' without the fault of that party, 'his duty of rendering performance is discharged.'" *Faw*, 2024 WL 3237601, at \*6 (quoting *Burkus v. Henshall*, 126 A.2d 722, 725 (Pa. 1956)). However, the

applicability of this defense is better determined after discovery, as "discovery is necessary to clarify the extent to which [the University] was legally barred from performing its alleged contractual obligations." *Faw*, 2024 WL 3237601, at *7. Even with this considered, the University maintains that the Court may consider an impossibility defense at the motion to dismiss stage when facts not included in the complaint "involve reference to public documents." (Doc. 17, at 7); *see Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000). The University avers that reference to the Covid-19 shutdown meets this criterion. (Doc. 17, at 7). In response, Plaintiff argues that the University's assertion of the impossibility defense is premature because per Federal Rule of Civil Procedure 8, "a complaint need not anticipate or overcome affirmative defenses." (Doc. 16, at 11) (quoting *Schmidt v. Skolas*, 770 F.3d 241, 248-49 (3d Cir. 2014)). Plaintiff further contends that the impossibility defense is not "apparent on the face of the complaint" because the University "does not point to any allegations in the Complaint to establish that it was impossible for the university to fully perform its obligation," and instead "improperly inserts facts." (Doc. 16, at 11).

Moreover, Plaintiff contends that the impossibility defense "at most only excuses performance of a contract," and that any benefit previously conferred by either "is still subject to restitution." (Doc. 16, at 12). This contention is consistent with the fact that courts in this Circuit have recognized an impossibility defense "at most only excuses performance of a contract," and does not permit either party to retain benefits conferred upon it by the other party. *Camden*, 2024 WL 760232, at *3; ); *see Lichtenfels v. Bridgeview Coal Co.,* 531 A.2d 22, 26 (Pa. Super. Ct. 1987) ("a party whose duty of performance is discharged due to impracticability 'is entitled to restitution for any benefit that he has conferred on the other party by way of part performance or reliance'"); *see also Ninivaggi v. Univ. of Delaware*, 555 F.

Supp. 3d 44, 53 (D. Del. 2021) (finding that if students could prove their university promised in-person classes, and that became impossible, "the students might be able to recover restitution" if the school saved money as a result).

Plaintiff's allegation that "[the University] saved significant sums of money" as a result of the shift to online learning, is sufficient to satisfy Plaintiff's burden as to his claim that the University may be required to confer restitution upon Plaintiff at this early stage of the litigation. (Doc. 1, ¶ 80); *see Camden,* 2024 WL 760232, at *3 ("Camden has alleged that 'Bucknell saved significant sums of money' by switching formats, which the Court must accept as true on a motion to dismiss"); *see also Faw*, 2024 WL 3237601, at *7. Thus, the Court finds that at the motion to dismiss stage, it is premature to address the University's impossibility defense, as questions of fact regarding whether Plaintiff is entitled to restitution are to be addressed later in litigation. Accordingly, the Court finds that the University's modification, waiver, ratification, and impossibility arguments are not apparently resolved on the face of the complaint. The University's motion to dismiss is therefore **DENIED** on these bases. (Doc. 10).

### 4.  Plaintiff's "Entire Benefit"

Posing another alternative argument for dismissal, the University asserts that if the Court determines an implied contract for an "on-campus experience" existed based on the allegations in the Complaint, such experience was covered by fees paid by Plaintiff, not tuition, and therefore recovery must be limited accordingly. (Doc. 13, at 25). The University argues that its Course Catalog "makes clear that the Mandatory Fees are intended to compensate [the University] for providing the 'on campus experience' while tuition is entirely tied to coursework and academic credits." (Doc. 13, at 25). According to the University, the

17

Complaint concedes that Plaintiff paid the fee to benefit from on-campus services. (Doc. 13, at 26). Further, the University argues that Plaintiff fails to allege that "tuition includes anything other than the coursework and academic credits that [he] unquestionably received." (Doc. 13, at 26). Thus, the University avers, "the Tuition Claims and Mandatory Fee Claims are separate and distinct." (Doc. 13, at 27).

Plaintiff refutes the University's characterization of his allegations, noting that he alleges that he, and other members of his proposed class, "paid their tuition in the Spring 2020 semester to enjoy everything [the University] offered them, including *on-campus resources, campus community, and in-person education* throughout the entire Spring 2020 semester." (Doc. 1, ¶ 34; Doc. 16, at 26) (emphasis added). Plaintiff also points to his allegation that in exchange for his tuition, he expected to have "in-person interaction with faculty." (Doc. 1, ¶ 29; Doc. 16, at 26). Overall, Plaintiff maintains that "[d]espite paying tuition and fees to cover both their on-campus education and access to campus services and facilities, [the University] prevented Plaintiff and others from obtaining the full value of these benefits by closing its campus and unilaterally moving all courses online mid-way through the spring 2020 semester." (Doc. 16, at 26-27).

Courts have found that at the motion to dismiss stage, it is sufficient for a plaintiff to allege that he or she paid both tuition and fees in exchange for an on-campus experience and education. *See Faw*, 2024 WL 3237601, at *5 ("The Court agrees that Plaintiff has adequately alleged payment of 'tuition in the Spring 2020 semester to enjoy everything Villanova offered [her], including on-campus resources, campus community, and in-person education for the entire Spring 2020 term'"); *see also Camden*, 2024 WL 760232, at *4 ("While claims to tuition and other fees may be distinct, Camden's Complaint is sufficient to state a claim for breach of

contract as to both"). Here, Plaintiff's allegation that he paid tuition to "enjoy everything [the University] offered [him], including *on-campus resources, campus community, and in-person education* throughout the entire Spring 2020 semester," is sufficient to meet this burden. (Doc. 1, ¶ 34). The University's motion to dismiss is therefore **DENIED** on this basis. (Doc. 10). Plaintiff has sufficiently stated a claim for breach of an implied contract against the University.

B.  UNJUST ENRICHMENT CLAIM

The parties also dispute whether Plaintiff has sufficiently alleged that the University was unjustly enriched by retaining Plaintiff's tuition and fee payments following the campus shutdown due to the Covid-19 pandemic. The University argues that because it never promised Plaintiff a fully "on-campus experience," it would not be "inequitable" for the school to retain his tuition and fee payments, as it continued to provide a benefit in the form of online courses for academic credit, in exchange for tuition payments. (Doc. 13, at 17-18). Plaintiff argues that because his courses "lacked the in-person feature and cost [the University] less to provide than the promised education," the University's retention of the money he paid is unjust. (Doc. 16, at 16).

Under Pennsylvania law, to assert a claim for unjust enrichment a plaintiff must allege: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated that benefit; and (3) the defendant retained the benefit under circumstances where it would be inequitable to do so without payment of value." *Hickey*, 81 F.4th at 316 (citing *WFIC, LLC v. LaBarre*, 148 A.3d 812, 819 (Pa. Super. Ct. 2016)); *see also Faw*, 2024 WL 3237601, at *6. A plaintiff may recover for unjust enrichment "by contractual remedy in cases where there is found to be, in fact, no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise." *Figueroa v. Point Park Univ.*, 553 F.Supp.3d

259, 275 (W.D. Pa. 2021). While Pennsylvania law prohibits unjust enrichment claims when the parties' relationship is governed by an express or implied contract, "the Federal Rules of Civil Procedure permit such claims to be pleaded in the alternative where [] the existence or applicability of a contract is in dispute." *Hickey* 81 F.4th at 315–16 (citing Fed. R. Civ. P. 8(d)(3)) ("A party may state as many separate claims or defenses as it has, regardless of consistency"). Here, Plaintiff asserts his unjust enrichment claim in the alternative to his breach of implied contract claim. (Doc. 1, ¶¶ 74-84). Further, the parties do not dispute that Plaintiff has sufficiently pled elements one and two of his unjust enrichment claim. The parties disagree just about whether Plaintiff has sufficiently pled element three of his claim, that the University received a benefit that it would be inequitable for it to retain in full. (Doc. 13 at 17-18; Doc. 16, at 15-16). For the following reasons, the Court finds Plaintiff has sufficiently pled a claim for unjust enrichment.

Plaintiff alleges that "as a result of closing campus and moving classes online, Scranton saved significant sums of money." (Doc. 1, ¶¶ 80-81). Other courts have held that this allegation is sufficient for an unjust enrichment claim to survive a motion to dismiss. *See Hickey*, 81 F.4th at 316 (holding that the plaintiffs adequately stated an unjust enrichment claim when "[t]he Students allege[d] that the Universities retained considerable cost savings— at Students' expense—by transitioning to remote learning"); *see also Faw*, 2024 WL 3237601, at *8 ("This Court must apply the Third Circuit's holding in *Hickey*, which applies squarely to the facts alleged here: specifically, that a plaintiff may plausibly allege an unjust enrichment claim by pleading that a university inequitably retained tuition and fee payments despite having transitioned to remote learning during the COVID-19 pandemic"); *see also Camden* 2024 WL 760232, at *4 ("Just as in *Hickey*, Camden has adequately alleged that Bucknell

'retained considerable cost savings—at [Bucknell] Students' expense—by transitioning to remote learning'"). While the parties dispute whether the University profited from the transition to online learning, that is a factual question that cannot yet be resolved. *See Hickey*, 81 F.4th at 316 ("we will not resolve that factual question at the motion-to-dismiss stage"). Accordingly, the Court will **DENY** the University's Motion to Dismiss as to Plaintiff's unjust enrichment claim.

IV.   CONCLUSION

For the foregoing reasons, the University's Motion to Dismiss is **DENIED**. (Doc. 10). An appropriate order follows.

Dated: August 19, 2024                                        *s/ Karoline Mehalchick*
                                                              **KAROLINE MEHALCHICK**
                                                              **United States District Judge**